IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT R. LOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.      2:08-cv-1218-TMP |
| | ) | |
| PENN NATIONAL INSURANCE | ) | |
| COMPANY; et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the motion for summary judgment filed September 5, 2008, by defendant Penn National Insurance Company.[1] The plaintiff has filed a response in opposition to the motion. The defendant has filed a reply. Having considered all of the arguments and evidence submitted by the parties, the court finds that the motion for summary judgment is due to be granted.[2]

This action appears to allege claims for breach of an insurance contract and bad faith failure to provide insurance benefits. Although the complaint is far from an example of clear pleading, a fair reading of the complaint reveals allegations that defendant Penn breached its insurance policy on two separate occasions, one in March 2004 and one in May 2007, by denying coverage for a state-court lawsuit filed against plaintiff. Further, the complaint alleges that the denials of coverage were

---

[1]     The defendant has asserted that its proper name is Pennsylvania National Mutual Casualty Insurance Company. Accordingly, the Clerk is DIRECTED to change the style of this case to reflect the defendant's proper name.

[2]     The parties have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 24).

in bad faith.  Thus, for purposes of analyzing the motion for summary judgment, the court has

considered counsel's arguments in the context of two alleged breaches of contract and two separate

allegations of bad faith.


STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.

56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of

material fact, or by showing that the nonmoving party has failed to present evidence in support of

some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-

23.  There is no requirement, however, "that the moving party support its motion with affidavits or

other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories,

and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id.

at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form

necessary for admission at trial; however, he may not merely rest on his pleadings.  Celotex, 477

U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  Id. at 322.

     After the plaintiff has properly responded to a proper motion for summary judgment, the

court must grant the motion if there is no genuine issue of material fact, and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify

which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for trial."

Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc.

v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than

show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations

omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must

"view the evidence presented through the prism of the substantive evidentiary burden," so there must

be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S.

at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless,

credibility determinations, the weighing of evidence, and the drawing of inferences from the facts

are the function of the jury, and therefore the evidence of the non-movant is to be believed and all

justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need

not be given the benefit of every inference but only of every reasonable inference.  Brown v. City

of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

UNDISPUTED FACTS

Viewing the evidence in the light most favorable to the nonmovant, plaintiff Robert Lott, the

court finds the following facts to be undisputed for purposes of evaluating the motion for summary

judgment:

Lott owned Legacy Planning Group, LLC, an insurance brokerage agency.  Legacy was

insured under a business liability policy issued by defendant Pennsylvania National Mutual Casualty

Insurance Company ("Penn").  On January 30, 2004, Elizabeth Diane Covin sued Lott, alleging that

she had not been paid commissions to which she was entitled as an insurance agent.  On February 23,

2004, Lott notified Penn of the Covin lawsuit and sought defense and indemnity coverage, sending

Penn a copy of the summons and complaint.  The complaint originally filed by Covin alleged that

Lott refused to pay commissions she earned on insurance sales and that he contacted her customers

to persuade them to name him as their sole agent.  Her original complaint asserted breach of contract,

tortious interference with contractual relationships, fraud, implied contract, unjust enrichment, and conversion.

On March 2, 2004, Jeff Bryant, a claims specialist with Penn, wrote Lott a letter informing him that coverage was declined and that the claim submitted was not covered under the policy in effect, or was excluded. Lott received the letter from Penn on March 4, 2004. Thereafter, Lott retained his own lawyers to defend him in the Covin lawsuit, and he did not further seek coverage from Penn or seek reconsideration of Penn's claims decision.

Two and a half years later, on August 1, 2006, Covin amended her complaint, adding a claim for defamation and/or slander, again based on the allegation that Lott contacted her customers, disparaging her in an attempt to persuade them to name him as their sole agent. It is undisputed that neither Lott nor his attorneys notified Penn of the amended complaint. Lott's motion for summary judgment on all claims except the slander/defamation claim was granted, and the slander claim was tried before a jury. On March 9, 2007, the jury returned a verdict in favor of Covin in the amount of $150,000. Lott also incurred in excess of $78,000 in fees and expenses defending the Covin suit.

Two months after the jury verdict, on May 8, 2007, Lott wrote a letter to Penn requesting that it "reopen" its initial denial of coverage based upon the amended complaint's allegations of slander. In the letter, Lott stated that he had failed to notify Penn of the amended complaint and explained: "Since you had already denied our claim, it did not come to our attention until after the trial that coverage for slander was provided under our policy...." On May 29, 2007, Shari Campbell, a claims specialist with Penn, wrote Lott a letter in which Penn declined coverage, asserting that Lott had

failed to timely notify Penn of the claim arising from the slander allegation added in the amended complaint.

On May 27, 2008, Lott filed the instant action against Penn and another insurer, alleging that Penn breached its contract by failing to provide a defense and indemnity in the Covin lawsuit, and further alleging that the denial of coverage was in bad faith.  The complaint does not clearly set forth separate claims for breach of contract and bad faith. It merely alleges that "Defendants failed and refused to [appear and defend the Covin action].  Defendants failure and refusal was in bad faith, with malice, and in reckless disregard of the terms of the policy...."  (Complaint,¶ VII).  As noted above, Penn denied coverage on two occasions, and it is unclear from the complaint whether plaintiff is attempting to allege that breach of contract and bad faith occurred on both occasions.  The court will construe the complaint to allege two distinct breaches, causing two separate alleged torts of bad faith failure to provide insurance benefits.

DISCUSSION

A.  Statute of Limitation / Bad Faith Claims

Defendant Penn moves for summary judgment on plaintiff's claim for bad faith failure to pay based on the first denial of coverage in March 2004, arguing that it is barred by the applicable statute of limitation.  The defendant Penn asserts that it is undisputed that Lott made his initial claim for coverage on February 23, 2004, and was notified unequivocally of the denial of the claim on March 4, 2004.  The lawsuit was not filed until June 4, 2008, more than four years after the denial of the claim.

It is well settled under Alabama law that the statutory limitation period for a bad faith insurance claim arising on or after January 9, 1985, is two years.  Jones v. ALFA Mutual Insurance Co., 1 So. 3d 23 (Ala. 2008);  ALFA Mutual Insurance Co. v. Smith, 540 So. 2d 691, 692-93 (Ala. 1988); Ala. Code § 6-2-38 (1975).  A bad faith denial of an insurance claim is a cause of action which accrues "upon the event of the bad faith refusal, or upon the knowledge of the facts which would reasonably lead the insured to a discovery of the bad faith refusal."  Safeco Inssurance Co. of America v. Sims, 435 So. 2d 1219, 1222 (Ala. 1983).[3]

In this case, it is undisputed that Lott received a letter no later than March 4, 2004, unequivocally denying any coverage for the Covin lawsuit.  Assuming that the original complaint was sufficient to put the insurer on notice that slander was involved in the case and that coverage was therefore warranted,[4] or was sufficient to require further investigation by Penn before deciding whether coverage was provided, it is clear that the claim for bad-faith denial of coverage accrued on that date.  Accordingly, any bad faith claim relating to the March 2004 denial of coverage filed later than March 4, 2006, would be untimely under Alabama law.  The instant complaint was filed on

---

[3]   Plaintiff cites the case of Boyd Bros. Transp. Co., Inc. v. Fireman's Fund Ins. Companies, 540 F.Supp. 579 (M.D. Ala. 1982), for the proposition that a bad faith claim for failure to defend accrues, and the statute of limitation begins to run, only upon the termination of the underlying litigation for which coverage is denied.  Although this is a correct statement of the holding in Boyd Brothers, it also is clearly contradicted by the Alabama Supreme Court's subsequent holdings in, for example, Jones v. ALFA Mut. Ins. Co., 1 So. 3d 23 (Ala. 2008), which set the accrual of the cause of action at the time of the denial of coverage.

[4]   In adjudicating the motion for summary judgment, the court is not required to decide, and has not decided, whether the policy at issue provided coverage for any of the claims alleged by Covin in the original complaint.  Penn has argued only that the March 2004 allegedly bad-faith denial is barred by the two-year limitation.  This does not require the court to determine whether, in fact, the denial was correct because, whether correct or not, any bad faith arising from it is time-barred.

May 27, 2008, more than two years after the statute of limitation expired.  Consequently, Penn's motion for summary judgment on the claim for bad faith refusal to pay the claim based upon its 2004 letter is due to be granted and that claim is due to be dismissed as time-barred.

Plaintiff argues further, however, that the original complaint triggered a duty on the part of Penn to investigate the claims, and that a thorough investigation would have brought forward information that would lead Penn to believe that slander was involved and that a defense was, therefore, warranted.  This argument, albeit inartfully drawn, suggests that plaintiff is asserting a second, separate bad faith claim, arising from the 2007 letter written in response to the plaintiff's request to "reopen" the claims issue.  Defendant argues that it was not timely notified of the 2007 claim and, therefore, the allegation of bad-faith denial of the claim must be dismissed because plaintiff cannot show that there was no debatable reason to deny it.

Under Alabama law, it is well settled that the plaintiff in a bad faith denial of coverage case must prove the following elements: (1) that an insurance contract exists between the parties and that the insurance company has breached the contract; (2) that the insurer has intentionally refused to pay the insured's claim; (3) that there is an absence of any debatable reason for refusing to pay the claim; (4) that the insurer has actual knowledge of the absence of any debatable reason for the denial; and (5) that the insurer intentionally failed to determine whether there was a debatable reason to refuse to pay the claim.  See Ex parte Alfa Mutual Insurance Co., 799 So. 2d 957, 962 (Ala. 2001); Alfa Mutual Fire Insurance Co. v. Thomas, 738 So. 2d 815 (Ala. 1999); National Security Fire & Casualty Co. v. Bowen, 417 So. 2d 179 (Ala. 1982); Chavers v. National Security Fire & Casualty Co., 405 So. 2d 1 (Ala.1981); Poarch v. Alfa Mutual Insurance Co., 799 So. 2d 949 (Ala. Civ. App. 2000);

McLeod v. Life of the South Insurance Co., 703 So. 2d 362 (Ala. Civ. App.1996).   In response to

the defendant's motion for summary judgment based on the statute of limitation, the plaintiff argues

that Penn knew or should have known at the time that it was notified of the original Covin complaint

that allegations of slander were imminent and that coverage would be triggered.[5]   Plaintiff's

argument is based solely on a premise that the original complaint gave Penn sufficient notice that

conduct covered by the policy (slander) was involved in the lawsuit (even if unpleaded) and that the

duty to defend was thereby triggered.  Of course, if the original complaint gave sufficient notice that

slander was alleged, there was no need for an investigation, and the original denial triggered the

running of the statute of limitation.  If not, then there was no denial of the claim for slander until the

2007 letter.  To the extent that plaintiff attempts to state a second bad faith claim based on the 2007

letter, however, there clearly exists a debatable reason for the denial: It is undisputed that plaintiff

did not notify Penn of the slander claim in the amended complaint until after the verdict.

Accordingly, to the extent that plaintiff attempts to encompass a second bad faith claim within the

complaint, that claim also is due to be denied.  The undisputed facts show that plaintiff cannot carry

the burden of proving that the 2007 denial involved no debatable basis.  Regardless of whether the

failure of plaintiff to notify Penn about the amended complaint amounted to a meritorious basis for

denial, it certainly was a *debatable* basis sufficient to preclude a claim of bad faith.  See  Correll v.

Fireman's Fund Ins. Co., 529 So. 2d 1006 (Ala. 1988), and the discussion below related to plaintiff

---

[5]      Whatever may be argued about whether the original denial of coverage was an "abnormal"
bad faith claim in the sense that Penn allegedly denied the claim without a proper investigation, see
Jones v. ALFA Mutual Insurance Co., 1 So. 3d 23 (Ala. 2008), the second denial was grounded
clearly on the notice provisions of the insurance contract, requiring little, if any, investigation. The
second denial could only be a "normal" bad faith claim.

breach-of-contract claim relating to the 2007 denial of coverage by Penn.  Thus, Penn is entitled to

summary judgment insofar as the complaint alleges a bad faith denial claim arising from the 2007

post-judgment claim.


   B.  Breach of Contract

   Penn also seeks summary judgment on one of plaintiff's breach of contract claims,[6] asserting

that the plaintiff failed to give defendant timely notice of the slander claim set forth in the amended

complaint for which Penn denied coverage in 2007.  In support of its motion, Penn relies upon

Correll v. Fireman's Fund Ins. Co., 529 So. 2d 1006 (Ala. 1988).   Plaintiff attempts to distinguish

the case by pointing out that Correll was premised on the fact that the court had previously held that

the insurer was "not liable to defend because plaintiff had not alleged negligence."  In light of that

court determination, the insurer was not required to defend against the amended complaint, which

did allege a covered injury — negligence — when the plaintiff failed to give notice of the claim for

"approximately one year" after the amendment occurred.

   In Correll, the insurance company brought a declaratory judgment action arising from a

coverage dispute over an "errors and omissions" policy.  The original complaint in the underlying

action had not alleged any negligent acts that would trigger coverage.  In the declaratory judgment

action, the trial court granted summary judgment in favor of Fireman's Fund, holding that it had no

---

[6]      As explained above, the complaint can be read as asserting two distinct breaches of the insurance contract, one in 2004 and another in 2007.  To the extent that the complaint may be construed to state a breach-of-contract claim arising from the 2004 denial of coverage, the defendant has not sought summary judgment with respect to that allegation.  The only argument for summary judgment urged by the defendant for breach of contract relates to the "notice" provision made the basis of the denial of the 2007 request for coverage.

duty to defend the underlying action against the insured, which holding ultimately was affirmed by the Alabama Supreme Court. The matter was remanded to the trial court. In the meantime, the plaintiff in the underlying action against the insured amended his complaint to raise a negligence claim. That case was settled when the defendant insured entered into a consent judgment with the plaintiff. The insured then sought indemnification for the judgment amount from Fireman's Fund after the settlement agreement had been reached and after the consent judgment had been entered by the court. In the declaratory judgment action, the trial court declared that the insurer was not obligated to pay due to the insured's failure to notify Fireman's Fund about the amended negligence complaint. As the Alabama Supreme Court stated: "The question now presented is whether the notice provisions of that policy have been complied with under these facts so as to cast liability upon Fireman's Fund to pay the amounts due under the settlement agreement." Correll, 529 So. 2d at 1008. That is the precise issue before this court. The only substantial difference in the facts is that there has been no adjudication in the instant case regarding the duty to defend against the allegations raised in the original complaint. In spite of plaintiff's protestations, the court finds that difference to be of no import in the outcome. After making his claim for coverage in 2004, plaintiff did not protest, appeal, or otherwise object to the denial of coverage by Penn at that time. More than two years later, after judgment had been entered against him, plaintiff sought to "reopen" the claim to assert coverage on the basis of an amendment to the complaint in the underlying tort action. The latter claim for coverage amounted to a clearly distinct and separate claim, distant in time from the first claim and grounded on an entirely new allegation asserted by amendment in the underlying tort action.

The Alabama Supreme Court decided <u>Correll</u> based solely on the insured's failure to give notice.  That court explained:

The "notice" provision in the applicable policy states:

> "The insured shall as a condition precedent to his right to be indemni-
> fied under the insurance give to the company as soon as practicable
> notice in writing:
>
> "(a) of any claim against him...."

It is clear that no notice of the "negligence" claim was given to Fireman's Fund.  The notice it did receive was a demand to pay after that claim had been reduced to a judgment.  Plaintiffs contend that no notice of the negligence claim was necessary because Fireman's Fund had refused to defend them in the underlying actions at its peril, citing *Ladner & Co. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100 (Ala. 1977).  In the alternative, plaintiffs contend that, at all events, the delay in giving notice was reasonable for two reasons: (1) the underlying cases against Correll were settled and judgments entered within seven days of the time the amendment was made; and (2) Fireman's Fund received notice of the amendment and settlement within 17 days after this Court's final ruling in the first appeal.

In *Big Three Motors, Inc. v. Employers Ins. Co. of Ala.*, 449 So. 2d 1232 (Ala. 1984), the defendants had given notice of judgments rendered against them shortly after the entry of those judgments.  The judgments, however, sprang from actions that had been filed some three years and nine months before the notice of the judgments.  The reason given for the delay in giving notice was that the defendant was unaware of the existence of the insurance policy affording him coverage, and thus of its notice provision, until that time.  In deciding that the notice in question was untimely, this Court examined the legal standard applicable on that issue:

> "To determine the reasonableness of a delay in giving notice to an
> insurer, this Court traditionally considers the length of the delay and
> the reasons for the delay.  Southern Guaranty [Insurance Company v.
> Thomas], 334 So. 2d [879] at 882 [Ala.1976].  The question of
> whether the insurer was prejudiced by the delay is immaterial to this
> determination where, as in this case, the giving of reasonably timely
> notice is expressly made a condition precedent to any action against

the insurer. American Fire & Casualty Co. v. Tankersley, 270 Ala. 126, 116 So. 2d 579 (1959). We, therefore, cannot consider the insured's argument which alleged that its delay was reasonable because no prejudice to Employers resulted."

(Emphasis in original.) 449 So. 2d at 1235.

Reading the trial court's order, we find it unclear whether that court considered the additional element of prejudice when it determined that the notice in this case came too late. The authority cited by the trial court, *Seaboard Industries, Inc. v. Monaco*, 258 Pa. Super. 170, 392 A.2d 738 (1978), which contains facts similar to those in this case, did quote other Pennsylvania authority that placed upon the insurance company the additional burden of proving prejudice when late notice is used as a defense to a claim of coverage. But that court went on to hold this, 392 A.2d at 744: "If the amendment to the complaint alleged a new cause of action requiring Continental to defend, the insured was obligated to give Continental timely notice of that amendment so that Continental could evaluate a newly alleged duty to defend." Thus, to that extent, *Seaboard Industries, Inc.* comports with Alabama law; however, as shown above, our law considers the length of the delay and the reasons for the delay in determining whether the notice actually given was "timely" or reasonable. *Big Three Motors, supra; Pharr v. Continental Casualty Co.*, 429 So. 2d 1018 (Ala. 1983).

Accordingly, the plaintiffs here can take nothing from the absence of the burden upon the insurance company to prove prejudice. Plaintiffs' burden here was to excuse their absence of notice under the elements of *Ladner, supra, i.e.,* length of the delay and their reasons for the delay.

The amendment was filed on April 29, 1986. The fact that the first appeal, upon a different issue, was pending in this Court did not militate against the giving of notice of the amendment to the complaint in the trial court. That notice, along with notice of the judgments, came on April 14, 1987, when counsel for the defendants received them.

What was plaintiffs' reason for this delay? Only that Fireman's Fund had refused to defend based on the original allegations and thus had placed itself in peril. This reason is untenable, we respectfully submit, because the plaintiffs themselves then sought forthwith a judgment declaring their rights under the policy. Nothing in that decision to seek declaratory relief precluded Fireman's Fund from its entitlement to notice of the amendment charging negligence, a claim for which Fireman's Fund may have afforded coverage. "An insurer must be given notice of an amended pleading

which would impose a duty to defend, and a failure to give notice will relieve the insurer of liability under the policy." 7C Appleman, *Insurance Law & Practice* § 4683 at 57 (1979).

Moreover, the fact that the plaintiffs voluntarily chose to negotiate a settlement, then seek and obtain a consent judgment, and then enter into an agreement thereon with the plaintiffs in the underlying actions could not unilaterally operate to abrogate Fireman's Fund's right under the policy to receive notice from the insured of any claim against the insured. "Clearly, an insured cannot hold an insurer liable for a settlement as a penalty for failure to defend where no one called upon the insurer to do so [by giving notice]." 7C Appleman, *supra,* § 4690 at 237.

Thus, we find that the approximately one-year delay in giving notice, coupled with insufficient reasons for that delay, was too late to require the indemnification sought from the company. Accordingly, the judgment of the trial court was correct.

529 So. 2d at 1008.

The facts of the case at bar are strikingly similar. Penn declined coverage initially in 2004 based on a policy exclusion. Two years later, the complaint was amended to include a slander claim that without dispute was covered under the policy. The plaintiff did nothing to notify the defendant of the amendment until nine months after the complaint was amended and two months after trial and judgment. The plaintiff's only articulated reason for the delay was that Penn had denied coverage on the original claims, and that it did not "come to [plaintiff's] attention" that coverage was provided under the policy. The long delay and insufficient reason for the delay satisfies that court that, under Correll, the plaintiff failed to give the notice required under the contract. Accordingly, the defendant is entitled to summary judgment on the breach-of-contract claim arising from its 2007 refusal to indemnify Lott for the judgment and defense costs. To be clear, the breach of contract alleged with respect to the initial 2004 denial of coverage remains pending.

CONCLUSION

For all of the reasons set forth above, the motion for summary judgment filed by defendant Penn is due to be GRANTED.  By separate order, the court will DISMISSED WITH PREJUDICE both of plaintiff's claims for bad faith failure to provide insurance coverage and the breach-of-contract claim arising from the 2007 declination letter.  The case will proceed on the plaintiff's breach-of-contract claim arising from the original 2004 denial of coverage.

Dated the 9th day of April, 2009.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE