FILED

2010 Jan-26  PM 04:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT R. LOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.     2:08-cv-1218-TMP |
| | ) | |
| PENN NATIONAL INSURANCE | ) | |
| COMPANY; *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment filed May 21, 2009, by

defendant American Automobile Insurance Company ("AAIC").  The plaintiff has filed a response

in opposition to the motion.  The defendant has filed a reply.  Having considered all of the arguments

and evidence submitted by the parties, the court finds that the motion for summary judgment is due

to be granted.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  <u>Celotex</u>, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." <u>Id</u>. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.  <u>Celotex</u>, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

<u>UNDISPUTED FACTS</u>

Viewing the evidence in the light most favorable to the nonmovant, plaintiff Robert Lott, the court finds the following facts to be undisputed for purposes of evaluating the motion for summary judgment:

AAIC issued a policy of insurance to "Agents of AXA Financial, Inc.," with effective dates of January 1, 2003, to January 1, 2004 ("the policy"). Plaintiff Robert Lott is an insured under the policy, which provides, in pertinent part:

I.     COVERAGES - PROFESSIONAL LIABILITY AND PERSONAL INJURY:

To pay on behalf of the INSURED, all sums which the INSURED shall become legally obligated to pay as DAMAGES because of:

A.     Any act, error or omission of the INSURED in rendering or failing to render PROFESSIONAL SERVICES for others as:

1.     A licensed Life Agent, Broker, General Agent or Manager;

2.     A licensed Accident and Health Agent, Broker, General Agent or Manager;

*                    *                  *

C.     PERSONAL INJURY caused by an offense arising out of rendering or failing to render PROFESSIONAL SERVICES for others in the conduct of the NAMED INSURED'S profession listed in Insuring Agreement I, Coverage A or B above.

*                    *                  *

H.     "PERSONAL INJURY" shall mean injury or DAMAGES arising out of one or ore of the following offenses:

4

1.      False arrest, detention or imprisonment.

2.      Malicious prosecution or humiliation.

3.      The publication or utterance:

    a.      Of a libel or slander or other defamatory or disparaging material, or

    b.      in violation of an individual's right of privacy.

    Except this insurance does not apply to publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the NAMED INSURED.

4.      Wrongful entry, eviction or other invasion of the right of private occupancy.

*               *               *

## EXCLUSIONS

This Policy does not apply to:

I.      Any act, error, omission or PERSONAL INJURY committed with dishonest, fraudulent, criminal or malicious purpose or intent; or claim arising out of DAMAGES which are expected or intended by the INSURED.  However, this Exclusion does not apply to any act which is the basis of a malicious prosecution claim.

II.      Bodily injury, sickness, disease or death of any person, or the injury or destruction of any tangible property including loss of use thereof.  However, this Exclusion does not apply to allegations of emotional distress or mental anguish if, and only to the extent that, they arise solely from the INSURED'S rendering or failing to render PROFESSIONAL SERVICES.

*               *               *

XIII.      Any claim arising out of disputes with another insurance agent or broker, including, but not limited to, disputes concerning commissions, fees, client lists or entitlements.  Notwithstanding the foregoing, the Company shall pay

5

DAMAGES and DEFENSE COSTS resulting from disputes with another insurance agent or broker who is not an INSURED under this policy.  The Company's obligation to pay such DAMAGES and DEFENSE COSTS shall not exceed $15,000 as the result of any one such claim.

\*                              \*                              \*

XX.   Any claim for DAMAGES sustained or alleged to have been sustained by any person, firm or corporation that is not or was not either a client of the INSURED, or a client's appointed administrator, beneficiary, executor, receiver, or trustee(s) in bankruptcy.  However, this Exclusion does not apply to PERSONAL INJURY that arises out of the rendering or failing to render PROFESSIONAL SERVICES for a client or prospective client of the INSURED.

\*                              \*                              \*

I.   INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUIT:

A.   As a condition precedent to the right of insurance coverage afforded herein, the INSURED shall:

1.   As soon as practicable, give written notice to the Company in the event a claim is made against the INSURED.  Written notice to be sent to the Company at:

c/o Lancer Claims Services, Inc.
Professional Liability Department
P.O. Box 7048
Orange, CA 92863-7048

2.   Immediately forward to the Company, c/o Lancer Claims Services, Inc., at the above address, every demand, notice, summons or other process received directly by the INSURED or by the INSURED'S representatives in the event suit is brought against the INSURED.

6

(Policy, Ex. 1A to Doc. 34).  The policy does not define the term "disputes," as that term appears in Exclusion XIII.

On January 30, 2004, Elizabeth Diane Covin sued plaintiff Robert Lott in the Circuit Court of Jefferson County, Alabama, alleging that she had not been paid commissions to which she was entitled as an insurance agent.  The complaint originally filed by Covin alleged claims for breach of contract, tortious interference with contractual relationships, fraud, implied contract, unjust enrichment, and conversion. (Complaint, Ex. C to Doc. 20).  Lott submitted the complaint to AAIC for coverage under his errors and omissions insurance policy.

On February 12, 2004, AAIC sent a letter to Lott informing him that AAIC was in the process of determining whether coverage existed under the policy, and advising him to retain his own counsel to protect his interests.  (Ex. 1B to Doc. 34).   AAIC subsequently denied plaintiff's request for coverage for the claims asserted in the Covin lawsuit.  On April 19, 2004, AAIC wrote Lott a letter informing him that it would provide a defense not to exceed $15,000, as set forth in Exclusion XIII, and that it would withdraw from the defense and decline any indemnity once the $15,000 was exhausted.  The letter further informed Lott that AAIC reserved all rights, and that a portion of the damages resulting from the alleged conduct was outside the coverage provided by the policy.  (Ex. 1C to Doc. 34).

For over a year, AAIC paid the defense costs in the Covin lawsuit.  On or about April 1, 2005, AAIC received a status report from counsel retained to represent Lott.  In that report, counsel reported that Covin testified during her deposition that Lott had convinced several insureds jointly solicited by her and Lott to remove her as the agent on their policies and that she did not know of

any reason they would do that.  Further, counsel reported to AAIC that they had interviewed various

of the insureds and learned that "Mr. Lott did not disparage [Covin] other than informing them that

she was no longer working for him and he did not feel she could be trusted."   A little more than a

month later, on May 20, 2005, AAIC sent a letter to Lott, informing him that the $15,000 sub-limit

had been exhausted, as well as all rights to indemnification and defense.  (Ex. 1D to Doc. 34).

Thereafter, in June 2005, AAIC closed the file on the claim and had no further involvement with the

Covin lawsuit.

The Covin lawsuit continued for another 14 months when, on August 1, 2006, Covin

amended her complaint.  The amended complaint stated an explicit claim for defamation and/or

slander for the first time.  Lott's motion for summary judgment on all claims except the

slander/defamation claim was granted by the state court, and the slander claim was tried before a

jury.  On March 9, 2007, the jury returned a verdict in favor of Covin in the amount of $150,000.

Lott also incurred more than $78,000 in fees and expenses related to the Covin lawsuit.

Two months after the jury verdict, on May 8, 2007, Lott wrote a letter to AAIC requesting

that it "reopen" its initial denial of coverage based upon the amended complaint's allegations of

slander/defamation.  The May 8 letter was the first notice plaintiff gave AAIC of the amended

complaint, although Lott's counsel had reported to AAIC in April 2005 that Covin had testified at

deposition:  "She feels Mr. Lott interfered with alleged professional relationships she had developed

with these individual clients.  She testified that there was no reason for the clients to remove her for

purposes of receiving continued commissions," and that their interviews with clients revealed that

Lott "did not disparage [Covin] other than informing them she was no longer working for him and

he did not feel she could be trusted."  On June 28, 2007, AAIC sent Lott a letter to inform him that AAIC declined Lott's tender of defense and indemnity.

On May 27, 2008, Lott filed the instant action against AAIC and two other insurance companies,[1] alleging that AAIC breached its contract by failing to provide a defense and indemnity in the Covin lawsuit, and further alleging that the denial of coverage was made in bad faith. Defendant Pennsylvania National Insurance Company ("Penn National") filed a motion for partial summary judgment in 2008, seeking summary adjudication of the bad faith claim and of a breach-of-contract claim arising from a decision to decline coverage in 2007.  The motion was granted by order dated April 9, 2009.  Penn National filed a second motion for summary judgment in May 2009, which also was granted, resulting in dismissal of all of plaintiff's claims against Penn National.

In the instant motion for summary judgment, AAIC seeks summary adjudication of all of plaintiff's claims, asserting that any bad faith claim arising from AAIC's declination of coverage in 2004 is time-barred, and asserting that plaintiff's breach-of-contract claims are without merit because the policy does not cover the claims, or the claims are excluded by the terms of the policy.  In response, the plaintiff concedes that his bad faith claim arising from the declination of coverage in 2004 is time-barred, but argues that AAIC breached its contract when it declined covered in 2004,

---

1      The complaint asserts, and AAIC states in its answer, that AAIC is a subsidiary of Fireman's Fund Insurance Company ("Fireman's Fund"), the third defendant named in the instant action. Fireman's Fund answered and appeared jointly with AAIC, but has not separately sought summary adjudication.  The complaint does not assert that any separate contractual relationship exists between Lott and Fireman's Fund.  It appears that plaintiff does not assert any separate theory of liablility against Fireman's Fund.

and again when it failed to cover the claims asserted in the 2007 amended complaint.  Plaintiff

further asserts that the 2007 declination decision was made in bad faith.


<u>DISCUSSION</u>

**A.  Breach Of Contract**

Defendant AAIC moves for summary judgment on plaintiff's claim that it breached its

insurance contract with him in 2004 by limiting its coverage to $15,000, asserting that the insurer

properly invoked Exclusion XIII.  Defendant further seeks summary adjudication on plaintiff's claim

based on the 2007 declination, in addition to invoking Exclusion XIII, by asserting that plaintiff

failed to meet the contractual condition precedent by failing to notify the insurer of the amended

complaint until after trial and verdict was entered against Lott.  Plaintiff argues that the claims made

by Covin in the original 2004 complaint and the amended 2006 complaint were covered by the policy

and not excluded because the policy's use of the word "dispute" in Exclusion XIII is ambiguous and

must be construed in favor of Lott, the insured.  Plaintiff further asserts that proper notice was given

in that counsel for plaintiff provided information to AAIC in the April 2005 status report from which

the insurer could have known that Covin was asserting a slander claim.

The issue before this court is whether there exists a genuine issue of material fact regarding

whether AAIC owed any additional duty to defend or indemnify Lott beyond the $15,000 it provided.

The parties do not dispute that the issue turns upon questions of insurance coverage under a contract

of insurance, which are governed by Alabama law.  Under Alabama law, the burden of proving that

coverage exists under a policy of insurance rests with the insured, but the burden of proving that an

exclusion applies to bar coverage lies with the insurer.  See Jordan v. National Accidental Insurance Underwriters, Inc., 922 F.2d 732, 735 (11th Cir. 1991), and cases cited therein.  See also Pennsylvania National  Mutual Casualty Insurance Co. v. Roberts Brothers, Inc., 550 F. Supp. 2d 1295 (S.D. Ala. 2008).  Under Alabama law, the general rules of contract law govern an insurance contract, and the policy must be enforced as written if the language of the policy is unambiguous. Safeway Ins. Co. of Ala., Inc., v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005).  Whether a contract term is ambiguous is a question of law, and to the extent that a term is ambiguous, it must be construed against the insurer.  Safeway, 912 So. 2d at 1143.  Furthermore, policies are to be liberally construed in favor of the insured.  Tanner v. State Farm Fire & Casualty Co., 874 So. 2d 1058, 1065 (Ala. 2003), quoting Pacific Indemnity Co. v. Run-A-Ford Co., 161 So.2d 789, 795 (Ala. 1964). When a contract is unambiguous, the court must enforce the policy as written.  Lambert v. Coregis Insurance Co., Inc., 950 So. 2d 1156 (Ala. 2006).

Plaintiff first challenges AAIC's reliance upon Exclusion XIII, which limits liability to $15,000 for a "claim arising out of disputes with another insurance agent."[2]  It is undisputed AAIC provided coverage in the amount of $15,000 after first being informed about the original complaint in 2004.  That coverage sub-limit was exhausted by May 2005.  Because this argument involves an exclusion of coverage, defendant AAIC has the burden of proving its applicability as a defense to Lott's breach of contract claim.  To do so, it must show that there are no genuine issues of material fact and that it is entitled to claim the exclusion as a matter of law.

---

2       The plaintiff does not assert that Covin was not "another insurance agent."  The facts are clear that Covin was, at all relevant times, an insurance agent.

At the outset, it does not appear that there are any genuine issues of fact affecting this argument. Plaintiff Lott does not dispute that Covin was an insurance agent at all times relevant to the claim she asserted against him. Likewise, the language of the exclusion appears to have a simple and straightforward application to the facts. The exclusion limits insurance coverage as follows:

> XIII.   Any claim arising out of disputes with another insurance agent or broker, including, but not limited to, disputes concerning commissions, fees, client lists or entitlements. Notwithstanding the foregoing, the Company shall pay DAMAGES and DEFENSE COSTS resulting from disputes with another insurance agent or broker who is not an INSURED under this policy. The Company's obligation to pay such DAMAGES and DEFENSE COSTS shall not exceed $15,000 as the result of any one such claim.

By its terms, the provision excludes coverage for any "disputes" between the insured (Lott) and "another insurance agent or broker...." The types of "disputes" encompassed by the exclusion is broad, "including, but not limited to, disputes concerning commissions, fees, client lists or entitlements." Certainly, the original complaint filed by Covin in 2004 reflected a "dispute" with Lott concerning "commissions" she claims he denied her. Also, the Covin complaint alleged intentional interference with a business relationship, specifically Covin's relationship with her insurance clients, another "dispute" explicitly disclaimed by the exclusion as involving "client lists or entitlements." Thus, on its face, the exclusion appears to limit AAIC's insurance coverage of this "dispute" to $15,000, which AAIC fulfilled.

Plaintiff asserts that the exclusion is ambiguous because the policy does not define the term "dispute." Such an argument is, at best, completely unfounded and, perhaps, frivolous. The plaintiff has not cited any case in which the term "dispute" has been deemed ambiguous. The word has a

plain meaning, not subject to multiple or inconsistent constructions.   The dictionary defines "dispute" as a "verbal controversy," "debate," or "quarrel."   Merriam-Webster's Collegiate Dictionary, 10th ed. (1996).   An insured cannot avoid the plain meaning of a term of the insurance policy by "unduly strain[ing]" the language.   Woodall v. Alfa Mutual Insurance Co., 658 So. 2d 369, 371 (Ala. 1995). The Alabama Supreme Court noted:

> "[I]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous."

Woodall, 658 So. 2d at 371, quoting Gregory v. Western World Ins. Co., 481 So.2d 878, 881 (Ala.1985) (citation omitted).   Applying the plain meaning of the term, as the court must, it is clear that the lawsuit between Covin and Lott was a "dispute."

Plaintiff further attempts to argue that Covin's lawsuit, because it sought emotional-distress and humiliation damages, in addition to lost commissions, was not a "dispute" within the meaning of Exclusion XIII.   He contends the original Covin complaint in 2004 contained a "personal injurr action," beyond the mere "dispute" over commissions and insurance clients.   This argument similarly has no foundation in fact or law.   The exclusion is not based on the nature of the damages sought, but turns entirely upon the nature of the controversy, that is, whether it is a "dispute" involving "another insurance agent or broker."   It does not matter whether the other agent or broker is asserting a "personal injury claim" against the insured, the policy simply excludes coverage beyond the sub-limit of $15,000 for any "dispute" with an insurance agent or broker.   The language of the policy

13

specifically states that the exclusion encompasses, "*but [is] not limited to*, disputes concerning commissions...." [Emphasis added].  Because the policy excludes coverage in excess of $15,000 for any claim arising from a dispute with another insurance agent, the defendant has demonstrated that the exclusion applies.  Accordingly, AAIC is entitled to summary judgment in its favor on the 2004 breach-of-contract claim.

Defendant further seeks summary adjudication of the plaintiff's claim that AAIC breached the contract in 2007 when it declined coverage after judgment was entered on Covin's slander claim alleged in the amended complaint.  Plaintiff is caught in a difficult position here.  In opposition to the motion for summary judgment filed by co-defendant Penn National, Lott took the position that the slander claim actually is the same claim as the intentional interference claim asserted in the original complaint.[3]  Lott makes the same argument here in order to avoid AAIC's assertion that Lott failed to give requisite notice of the amended complaint.  Even so, this means that AAIC exhausted its $15,000 sub-limit for coverage in 2005 and owed no further coverage obligation when the Covin complaint was amended in 2006.  In order for the court to find in favor of the plaintiff on the 2007 breach-of-contract claim, the contract would have to be construed to mean that the $15,000 sub-limit

---

3      The plaintiff has argued that Count Two of the 2004 Complaint, which sets forth a claim for intentional interference with a contractual relationship, is "in essence" a claim for libel or slander. To support this argument, plaintiff points to paragraph 13 of the original complaint, which alleges that Lott "intentionally, maliciously, and without justification instructed the previously described and identified insureds to remove Plaintiff Covin as the agent of record for the insurance contracts ..." Reading that paragraph in particular, and the entire complaint in context, the court found in favor of Penn National on the question, holding that the facts alleged do not set out a claim for slander or libel, and do not even set forth sufficient allegations to put the insurer on notice that the "essence" of the claim is one for slander.  Even so, the issue of whether the intentional-interference claim is a separate claim from the claim for slander does not resolve the issue raised by AAIC, which requires a finding of whether there exists more than one "dispute."

applied to *each* count or *each* legal theory alleged in a complaint, even where the counts all arise from a single transaction or from the same factual scenario.  The court finds no foundation for such a conclusion.  In this case, Lott had a single "dispute" with Covin, and AAIC provided coverage to the $15,000 limit allowed by the applicable exclusion.  To find otherwise would render the cap meaningless, as a creative lawyer could always circumvent the limitation by pleading numerous theories of recovery, claiming that each was entitled to its own distinct $15,000 limit on coverage.  The better construction is that "dispute" has the same meaning as a "cause of action," that is, the factual transaction comprising the primary injury or wrong asserted in the controversy between the parties, regardless of the number of legal theories of relief the pleader might imagine.[4]  Here, the "dispute" arose from Lott's efforts to deprive Covin of fees and commissions she claimed from insurance clients.  There is but one "dispute."

Moreover, even if the $15,000 limit did not preclude coverage, the defendant still would be entitled to summary judgment based on the notice provision of the contract.  Even if vague assertions

---

[4]     See for example cases involving both *res judicata* and application of the relation-back doctrine under Rule 15.  The Alabama Supreme Court has repeatedly held that mere legal theories of relief are not the measure of the "cause of action."  In Old Republic Ins. Co. v. Lanier, 790 So. 2d 922 (Ala. 2000), the court explained, "'"[w]here two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit."'" Id. at 928 (quoting Silcox v. United Trucking Serv., Inc., 687 F.2d 848, 852 (6th Cir. 1982)); see also Crooked Creek Properties, Inc. v. Ensley, 2009 WL 3644835 (M.D.Ala., Oct. 28, 2009) (quoting Alabama Supreme Court for holding that "'the principal test for comparing causes of action [for the application of *res judicata*] is whether the primary right and duty or wrong are the same in each action.'")(quoting Chapman Nursing Home, Inc. v. McDonald, 985 So. 2d 914, 921 (Ala. 2007)).  Also, in the context of the relation-back doctrine and whether an amendment involves the same "cause of action," see Ex parte Johnston-Tombigbee Furniture Mfg. Co., Inc., 937 So. 2d 1035 (Ala. 2005), holding that the relation-back doctrine focuses on the factual controversy, not the mere legal theories of relief offered by amendment.

were made to AAIC  that Lott has disparaged Covin, these assertions were not sufficient to provide

AAIC with notice that Lott was filing a separate, second claim.  The policy language relating to

notice specifically requires the insured to "[i]mmediately forward to the Company ... every demand,

notice, summons or other process received directly by the INSURED or by the INSURED'S

representatives."  This requirement was expressly a "condition precedent" to coverage.    It is not

disputed that Lott and his attorneys failed to provide AAIC with the amended complaint until after

judgment.  The fact that a status report on April 1, 2005, suggested that Lott may have said that

Covin was not trustworthy was not enough to put AAIC on notice of any claim within the coverage

of the policy.  At the time that report was submitted, Covin had *not* amended the complaint and had

*not* asserted a claim for defamation.  In assessing whether it owed Lott any coverage, AAIC had to

determine what Covin was actually claiming, not what she *might* claim at some time in the future.

AAIC owed a duty to provide coverage for claims within the terms of its policies, not claims that

might (or might not) be made in the future.

Lott argues that AAIC had a duty to conduct a reasonable investigation before it denied

coverage.  A reasonable investigation by AAIC would not have revealed the fact necessary to

establish coverage: whether or not Covin would assert a claim for defamation that she had not yet

asserted.  Surely Lott does not suggest that, as part of its reasonable investigation, AAIC should have

gone to Covin and asked her, "Do you plan to amend your complaint to add a claim for defamation

against our insured?"  At the time AAIC closed its file on this matter in June 2005, Covin had not

sued Lott for defamation and, thus, there was no claim then existing within the coverages provided

by the policy.  AAIC did not act unreasonably, and it was up to Lott to bring the amended complaint

16

— the document that he identifies now as having created a covered claim — to the attention of AAIC in a timely manner.  He failed to do so.  Accordingly, AAIC's motion for summary judgment as to the alleged 2007 breach also is due to be granted on this additional ground.[5]

### B.  Bad Faith

On a claim of tortious bad faith refusal to pay or honor an insurance claim, the insured bears a "heavy burden" of proving that there existed no basis for the insurance company's refusal of the claim.  Shelter Mutual Insurance Co. v. Barton, 822 So. 2d 1149, 1154 (Ala. 2001).  The Alabama Supreme Court has explained:

> To establish a prima facie case of bad-faith refusal to pay an insurance claim, a "plaintiff must show that the insurer's decision not to pay was without any ground for dispute"; in other words, the plaintiff must demonstrate that the insurer had no legal or factual defense to the claim.  LeFevre, 590 So. 2d at 159.  "'[T]he insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim.'"  LeFevre, 590 So. 2d at 159 (quoting Burns v. Motors Ins. Corp., 530 So. 2d 824, 827 (Ala.Civ.App.1987)).  "[A] finding of bad faith based upon rejection of an insurer's legal argument should be reserved for extreme cases.  The right of an insurer to deny a claim on any arguable legal issue is to be as zealously guarded as is its right to decline benefits on any debatable issue of fact, the test of reasonableness being the same."  Safeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1226 (Ala. 1983) (Jones, J., concurring specially).

---

5       The court need not address AAIC's additional arguments that the conduct alleged by Covin was not covered under the policy because Lott was not providing "professional services" as defined by the policy.  Similarly, the court declines to examine the argument that coverage does not exist because Covin was not a client of Lott.

Shelter Mutual Insurance Co. v. Barton, 822 So. 2d 1149, 1154 (Ala. 2001), citing LeFevre v. Westberry, 590 So. 2d 154, 159 (Ala. 1991); see also Acceptance Insurance Co. v. Brown, 832 So. 2d 1, 16 (Ala. 2001) ("To recover on such a claim, the plaintiff must prove: (1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for the refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal."). Thus, if there is any reasonably arguable basis, legal or factual, for refusing an insurance claim, even if ultimately that basis proves incorrect, no bad faith can be shown.

Under Alabama law, a bad faith claim usually requires that the plaintiff show that he is entitled to a directed verdict on the contract claim. Chavers v. National Security Fire & Casualty Co., 405 So. 2d 1 (Ala. 1981). This requirement is part of the "normal" bad faith case; however, in the "extraordinary" or "abnormal" case, Alabama recognizes that bad faith may be shown where the plaintiff shows the "insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." See, e.g., Taylor v. Prudential Insurance Co. of America, 775 F.2d 1457, 1458-59 (11th Cir. 1985). In the "abnormal" case, the entitlement to a directed verdict is not an element so long as the plaintiff can show that the insurer "recklessly or intentionally failed to properly investigate a claim." Grissett, 732 So. 2d at 976.[6]

_____

[6]      The decision as to whether the insurer was justified in denying a claim must be judged by the information that the insurer had before it at the time the denial was made. State Farm Fire & Cas. Co. v. Balmer, 672 F. Supp. 1395, 1402 (M.D. Ala. 1987). At the time it made the decision, AAIC had plaintiff's letter informing it of the August 2006 amendment to the Covin complaint and the March 2007 jury verdict. Nothing else was need to reasonably conclude that the notice provision of the policy had not been met.

Because plaintiff has failed to demonstrate that he could prevail on either of his breach-of-contract claims, the only type of bad faith claim he could conceivably assert for the 2007 declination[7] would be an "abnormal" bad faith claim.  In support of this claim, the plaintiff has shown only that AAIC denied the claim promptly after receiving the May 2007 letter.[8]  Plaintiff has not demonstrated that there was no reasonable basis for the denial.  To the contrary, several policy exclusions appear to be in play.  Accordingly, the 2007 bad faith claim also is without merit, and AAIC's motion for summary judgment is due to be granted on that claim.

CONCLUSION

For all of the reasons set forth above, the motion for summary judgment filed by defendant AAIC is due to be and hereby is GRANTED.  Plaintiff's claims against this defendant are due to be DISMISSED WITH PREJUDICE.  A separate order will be entered granting the defendant's motion for summary judgment and dismissing the plaintiff's claim with prejudice.

Dated the 26th day of January, 2010.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE

---

7      As noted *supra*, any bad faith claim arising from the 2004 declination of coverage is time-barred.

8      Although plaintiff argues that AAIC conducted no investigation, there is no evidence offered in support of this claim.  The fact that the notice was first given *after* the verdict against Lott was return reasonably informed AAIC that the notice "condition precedent" had not been met and was a sufficient basis for denying the claim.

19