FILED
2010 Jan-26  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT R. LOTT,                           )
                                          )
              Plaintiff,                  )
vs.                                       )        Case No.        2:08-cv-1218-TMP
                                          )
PENN NATIONAL INSURANCE                   )
COMPANY; *et al.*                         )
                                          )
              Defendants.                 )

**MEMORANDUM OPINION**

This matter is before the court on the motion for summary judgment filed May 29, 2009, by

defendant Pennsylvania National Mutual Casualty Insurance Company ("Penn National").  The

plaintiff has filed a response in opposition to the motion.  The defendant has filed a reply.  Having

considered all of the arguments and evidence submitted by the parties, the court finds that the motion

for summary judgment is due to be granted.

STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## UNDISPUTED FACTS

Viewing the evidence in the light most favorable to the nonmovant, plaintiff Robert Lott, the court finds the following facts to be undisputed for purposes of evaluating the motion for summary judgment:

Plaintiff Randy Lott is a college and law school graduate.  He has worked in the insurance industry since 1979.  Lott's brother, Ricky Lott, was plaintiff's insurance broker when Lott purchased the Penn National policy at issue.

Lott owned Legacy Planning Group, LLC, an insurance brokerage agency.  At some time in 2000, the LLC was dissolved, but Lott continued in business as Legacy Planning Group ("Legacy").  Elizabeth Diane Covin worked as an employee of Legacy until December 2002, and later continued to work as an independent insurance agent, sharing some commissions with Lott pursuant to an oral agreement.[1]  Legacy was insured at the relevant time under a business liability policy issued by defendant Penn National.  The policy provides, in relevant part:

    A.    Coverages

        1.    Business Liability

            a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury"

---

[1]    The defendant asserts that "Lott took the position that Covin's 'employment relationship with Mr. Lott was terminated in the summer of 2003,'" but the exhibit to which defendant refers does not contain that representation.  Lott clearly stated in his deposition that Covin was not an employee after December 2002, although she continued to work selling insurance and getting paid commissions. (Lott Depo., p. 22, attached as Defendant's Ex. M to Doc. 38).  The defendant has not pointed the court to any evidence that contradicts Lott's assertion.

to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply.  We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\*                          \*                          \*

b.    This insurance applies:

(1)    To "bodily injury" and "property damage" only if:
   (a)    The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory'" and
   (b)    The "bodily injury" or "property damage" occurs during the policy period.
(2)    To:
   (a)    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

\*                          \*                          \*

B.    Exclusions

1.    Applicable To Business Liability Coverage

This insurance does not apply to:

a.    Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*                          \*                          \*

5

    e.       Employer's Liability

            "Bodily Injury" to:
            (1)    An "employee" of the insured arising out of and in the course of:
                    (a)    Employment by the insured; or
                    (b)    Performing duties related to the conduct of the insured's business;

            *                *                *

    p.       Personal Or Advertising Injury

            "Personal injury" or "advertising injury":
            (1)    Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

            *                *                *

F.  Liability and Medical Expenses Definitions

            *                *                *

    3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

            *                *                *

    12.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    13.    "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

          a.       False arrest, detention or imprisonment;

          b.       Malicious prosecution;

          c.       The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

              premises that a person occupies, by or on behalf of its owner, landlord or lessor;

    d.      Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services or

    e.      Oral or written publication of material that violates a person's right of privacy.

15.     "Property damage" means:

    a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or

    b.      Loss of use of tangible property that is not physically injured. All such loss os use shall be deemed to occur at the time of the "occurrence" that caused it.

(Policy, Ex. B to Doc. 20).

On January 30, 2004, Covin sued Lott in the Circuit Court of Jefferson County, Alabama, alleging that she had not been paid commissions to which she was entitled as an insurance agent. On February 23, 2004, Lott notified Penn National of the Covin lawsuit and sought defense and indemnity.  The complaint originally filed by Covin alleged claims for breach of contract, tortious interference with contractual relationships, fraud, implied contract, unjust enrichment, and conversion.  (Complaint, Ex.  C to Doc. 20).

On March 2, 2004, Jeff Bryant, a claims specialist with Penn National, wrote Lott a letter informing him that coverage was declined and that the claim submitted was not covered under the policy in effect, or was excluded.  Lott received the letter from Penn National on March 4, 2004.

Thereafter, Lott retained his own lawyers to defend him in the Covin lawsuit. He did not further seek coverage from Penn National, nor did he seek reconsideration of the defendant insurer's claims decision.

On August 1, 2006, Covin amended her complaint, adding a claim for defamation and/or slander. Neither Lott nor his attorneys notified Penn National of the amended complaint. Lott's motion for summary judgment on all claims except the slander/defamation claim was granted by the state court, and the slander claim was tried before a jury. On March 9, 2007, the jury returned a verdict in favor of Covin in the amount of $150,000. Two months after that, on May 8, 2007, Lott wrote a letter to Penn National requesting that it "reopen" its initial denial of coverage based upon the amended complaint's allegations of slander. In the letter, Lott stated that he had failed to notify Penn National of the amended complaint and explained: "Since you had already denied our claim, it did not come to our attention until after the trial that coverage for slander was provided under our policy...." On May 29, 2007, Shari Campbell, a claims specialist with Penn National, wrote Lott a letter in which the insurer declined coverage based upon the amended complaint, asserting that Lott had failed to timely notify Penn National of the amended complaint.

On May 27, 2008, Lott filed the instant action against Penn National and two other insurance companies,[2] alleging that Penn National breached its contract by failing to provide a defense and indemnity in the Covin lawsuit, and further alleging that the denial of coverage was made in bad faith. Defendant Penn National filed a motion for partial summary judgment in 2008, seeking

---

2      Lott's claims against American Automobile Insurance Company ("AAIC") and its parent, Fireman's Fund Insurance Company, are the subject of a separate memorandum opinion and order.

8

summary adjudication of the bad faith claim and of a breach-of-contract claim arising from a decision to decline coverage in 2007.  The motion was granted by order dated April 9, 2009.  In the instant motion for summary judgment, the defendant seeks summary adjudication of the remaining claim for breach-of-contract, which relates to  Penn National's decision to decline coverage in 2004 after it received notice of the claims asserted in the original complaint filed by Covin.  The defendant asserts that coverage is not provided under the policy because the claims in the Covin complaint did not allege an "occurrence" as defined by the policy and because the claims are excluded from coverage by the policy language.  In response, the plaintiff asserts that Penn National had a duty to investigate the claims set forth in the original complaint, and that, had it done so, it would have determined that coverage was provided because her allegations included a claim of slander that was covered under the policy.

DISCUSSION

Defendant Penn National moves for summary judgment on plaintiff's claim that the defendant breached its insurance contract with him in 2004 by declining to defend him after he notified the insurer of  Covin's original complaint in 2004.  Plaintiff argues that the original complaint triggered a duty on the part of Penn National to investigate the claims and to defend him.  Penn National asserts that the claims set forth in the Covin complaint in 2004 are not covered and are excluded from the policy, and that the company therefore owed no defense to plaintiff for the claims.

Defendant Penn National's argument rests upon its assertion that there exists no coverage under the policy for the claims raised by Covin because the policy provides coverage for claims of "bodily injury" ... "only if" the damage is "caused by an 'occurrence.'" The policy defines "occurrence" as an "accident." (Policy, Ex. B to Doc. 38). The defendant further contends that the claim is specifically excluded from coverage because it was "expected or intended from the standpoint of the insured." Finally, Penn National argues that the claims are specifically excluded from the policy for the additional reason that Covin was an employee whose injuries arose in the course of her employment.

The issue before this court is whether there exists a genuine issue of material fact regarding Penn National's duty to defend Lott when notified of the Covin lawsuit in 2004. The parties do not dispute that the issue turns upon questions of insurance coverage under a contract of insurance, which are governed by Alabama law. If the allegations made by Covin in her 2004 complaint concern actions covered by the policy and not excluded, then Penn National owes plaintiff a defense in that action.

Under Alabama law, the burden of proving that coverage exists under a policy of insurance rests with the insured, but the burden of proving that an exclusion applies to bar coverage lies with the insurer. See Jordan v. National Accidental Insurance Underwriters, Inc., 922 F.2d 732, 735 (11th Cir. 1991), and cases cited therein. See also Pennsylvania National Mutual Casualty Insurance Co. v. Roberts Brothers, Inc., 550 F. Supp. 2d 1295 (S.D. Ala. 2008). Plaintiff correctly notes that an insurer's duty to defend is more extensive than its duty to indemnify. Acceptance Insurance Co. v. Brown, 832 So. 2d 1 (Ala. 2001). Plaintiff argues that the insurer is liable here because the insurer

failed to properly investigate the claims made by Covin.  While an insurer's failure to investigate a claim may be relevant to a bad-faith claim, the plaintiff has not offered any legal support for the conclusion that a failure to investigate constitutes a breach of contract.  See, *e.g.*, Mutual Service Casualty Insurance Co. v. Henderson, 368 F.3d 1309, 1315 (11th Cir. 2004)(holding that question of whether insurer properly investigated a claim was an element of an inquiry into an "abnormal" bad faith claim, but not a breach of contract); State Farm Fire & Casualty Co. v. Slade, 747 So. 2d 293, 306-307 (Ala. 1999).  The plaintiff relies upon Ladner & Co., Inc., v. Southern Guaranty Insurance Co., 347 So 2d 100 (Ala. 1977), for the proposition that Penn National had a duty to investigate the facts surrounding Covin's claims before denying coverage.  Ladner, however, holds only that the *court* may look "to facts outside the bare allegations of the complaint" in deciding the coverage issue.  347 So. 2d at 103.  Ladner's admonition that an insurer may decide to decline coverage based on the complaint "at its own peril" is simply a recognition that a complaint can be amended to change theories of liability, and that an insurer may later be found liable for a defense or indemnity in a case in which it chose not to participate and thus has no control.  347 So. 2d at 104.[3]  In this case, the plaintiff's claims for bad faith are time-barred and already have been

---

[3]     Plaintiff further relies upon Tapscott v. Allstate Ins. Co., 526 So. 2d 570 (Ala. 1988), which similarly notes that a complaint that initially alleges intentional torts that may not be covered, can be amended to include covered conduct, which would require the  insurer to "begin defending and to indemnify for that claim."  Neither Tapscott nor Ladner holds, or even suggests, that denying coverage for a complaint that alleges intentional torts that are not covered constitutes a breach of contract.

dismissed. Consequently, the only issue presented here is whether coverage existed for the injury alleged by Covin; whether Penn National investigated the claims is not relevant to that inquiry.[4]

A.  Coverage

In determining whether coverage exists, the court looks to the policy, which the parties agree is governed by Alabama law.  Under Alabama law, the general rules of contract law govern an insurance contract, and the policy must be enforced as written if the language of the policy is unambiguous.  Safeway Insurance Co. of Ala., Inc., v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005). Whether a contract term is ambiguous is a question of law, and to the extent that a term is ambiguous, it must be construed against the insurer.  Safeway, 912 So. 2d at 1143.  Furthermore, policies are to be liberally construed in favor of the insured.  Tanner v. State Farm Fire & Casualty Co., 874 So. 2d 1058, 1065 (Ala. 2003), quoting Pacific Indemnity Co. v. Run-A-Ford Co., 161 So. 2d 789, 795 (Ala. 1964).  When a contract is unambiguous, the court must enforce the policy as written.  Lambert v. Coregis Insurance Co., Inc., 950 So. 2d 1156 (Ala. 2006).

---

4       Lott's allegation that the investigation would have resulted in the insurer providing a defense is premised upon his contention that an investigation would have revealed that Covin was going to allege that Lott had slandered her, and that the slander claim would have been covered.  As discussed *infra*, it is not at all clear that such a claim, even if foreseen by the insurer after an investigation, would have triggered coverage under the policy because the policy contains an exclusion for "oral or written" publication of false material.  Moreover, plaintiff has offered as evidence of an inadequate investigation nothing more than the fact that the decision was made in a week or less. There is no evidence as to what the insurer considered or what actions the insurer took during that week.  What other investigation would Lott have Penn National undertake?  Surely Lott does not suggest that, as part of its reasonable investigation, Penn National should have gone to Covin and asked her, "Do you plan to amend your complaint to add a claim for defamation against our insured?"

The court first looks to whether Lott has met his burden of proving that coverage exists under the language of the policy. The defendant asserts that the initial question is governed by the policy's requirement that coverage for plaintiff's injury is provided "only if" the injury was "caused by an occurrence." The policy defines an "occurrence" as "an accident." The plaintiff does not allege that these terms are ambiguous. The court, then, must give them their plain meanings and apply the coverage language as written.

In determining whether the coverage arising from an "occurrence" applies, the court first notes – although neither party has made any argument on this point – that the "occurrence" requirement applies only to claims for "bodily injury" or "property damage."[5] The policy defines bodily injury as "sickness or disease." In this case, Covin clearly sought damages only for lost commissions and emotional distress resulting from "anxiety, humiliation," "inconvenience, embarrassment," and "worry." (Original Covin Complaint, ¶¶ 15, 26). Plaintiff has not asserted that, under Alabama law, "bodily injury" is defined to include emotional distress. Neither has plaintiff asserted that anxiety or worry, embarrassment or humiliation, are sicknesses or diseases. A review of the case law reveals that this question has never been squarely addressed by the Alabama Supreme Court or the Alabama Court of Civil Appeals.[6] Federal courts applying Alabama

_____

5       The complaint makes no reference to any "property damage" or to any injury to any tangible property that could be construed as a claim for "property damage."

6       American States Insurance Company v. Cooper, 518 So. 2d 708 (Ala. 1987), has been cited for this proposition. However, Cooper addressed two policies. One specifically included mental anguish within the definition of "personal injury." The other policy does not appear to include such damages within its definition of "bodily injury," but the court either conflated the two policies, or referenced language from the second policy which was not included in the text of the opinion. The court supported its conclusion that "'bodily injury' includes sickness or disease which includes mental anguish" with citation to Morrison Assurance Co. v. North Amer. Reinsurance, 588 F. Supp

law have clearly upheld the rights of insurers to exclude coverage for emotional distress in cases where the policy expressly excludes such damages.  See, *e.g.*, Nationwide Property & Casualty. Co. v. Lacayo, 2009 WL 4831743 *3 (M.D. Ala., Nov. 3, 2008); State Farm Fire & Casualty Co. v. Burkhardt, 96 F. Supp. 2d 1343 (M.D. Ala. 2000).  Where the policy does not specifically exclude mental anguish from the definition of "bodily injury," however, such claims have been deemed to be covered under Alabama law.  See, *e.g.*, American Economy Insurance Co. v. Fort Deposit Bank, 890 F. Supp. 1011,1017 (M.D. Ala. 1995), citing Morrison Assurance Co. v. North American Reinsururance Corp., 588 F. Supp. 1324, 1327 (N.D. Ala. 1984); but *c.f.*, Foster v. United States, 249 F.3d 1275, 1278 (11th Cir. 2001)(emotional distress is not generally considered to be a physical injury in Alabama), overruled on other grounds, Commissioner of Internal Revenue v Banks, 543 U.S. 426, 125 S. Ct. 826, 160 L. Ed. 2d 859 (205).   Construing the term against the insurer and in favor of coverage, then, the court must find that the plaintiff has suffered a "bodily injury."

Even assuming (as the parties apparently do) that the original complaint alleged some sort of "bodily injury," coverage is not provided unless the injury was caused by an "occurrence."  The original complaint filed by Covin alleges in a count labeled as an intentional-interference claim that Lott "intentionally, maliciously and without justification instructed the ... insureds to remove plaintiff Covin as the agent of record for the insurance contracts" that were solicited jointly by Covin and Lott.  Plaintiff argues that this claim "is in fact her defamation claim."  The complaint further asserts

---

1324 (N.D. Ala. 1984).  In Morrison, however, the court simply concluded without discussion or precedent that "'mental anguish' is necessarily included within the terms 'sickness' or 'disease'." This conclusion seems to this court to be contrary to a plain reading of the terms "sickness" and "disease."

that in October 2002, Lott fraudulently represented that he would pay Covin for time on maternity leave and for her COBRA insurance payments.[7]  The defendant asserts that, because these claims both allege intentional torts, they cannot be deemed to allege an "occurrence."[8]

The policy clearly defines "occurrence" as an "accident."  The plaintiff does not contend that the term is ambiguous.  The court, therefore, construes the language according to its plain meaning, and finds that the intentional torts alleged are not "accidents" or "occurrences" covered by the policy. The Alabama Supreme Court has noted that, where an insured "decided upon a deliberate course of conduct and ... intentionally pursued that course of conduct," similar policy language precluded coverage because the conduct was not an "occurrence" that would trigger the duty to defend. Hartford Casualty Insurance Co. v. Merchants & Farmers Bank, 928 So. 2d 1006, 1013 (Ala. 2005)(finding that the insured carried out a series of purposeful acts, which resulted in injury that could be reasonably anticipated).  In Hartford, the Alabama Supreme Court applied the definition of "accident" found in BLACK'S LAW DICTIONARY and followed in previous holdings.  928 So. 2d at 1011.  Accordingly, to the extent that Covin's original complaint sought damages for any "bodily injury" or "property damage," such damages were not caused by an "occurrence," and are not covered under the policy.

---

7       The court's analysis of the original complaint is limited to these two claims, the intentional-interference claim and the fraud claim, because they are the two that plaintiff argues give rise to the duty to defend and indemnify.  The plaintiff has not argued that the Penn National policy provided coverage for the other claims asserted in the original complaint.

8       Defendant alleges both that the conduct is not covered because it is not an "occurrence" or accident, and that it is excluded because it was not "unexpected or unintended."  The exclusion will be discussed infra.

The policy at issue here provides coverage for a third type of damages, identified in the policy as "personal injury."  The policy provides a concrete definition of the term as an injury arising from one of five scenarios: false arrest, malicious prosecution, wrongful eviction, libel or slander, and invasion of privacy.  Again, the plaintiff has not asserted that there exists an ambiguity in the contract's use of the term or in the policy's definition.  The plaintiff argues that Count Two of the 2004 complaint, which sets forth a claim for intentional interference with a contractual relationship, is "in essence" a claim for libel or slander.  To support this argument, plaintiff points to paragraph 13 of the original complaint, which alleges that Lott "intentionally, maliciously, and without justification instructed the previously described and identified insureds to remove Plaintiff Covin as the agent of record for the insurance contracts ...."[9]  Reading that paragraph in particular, and the entire complaint in context, the court finds that the facts alleged do not set out a claim for slander or libel, and do not even set forth sufficient allegations to put the insurer on notice that the "essence" of the claim is one for slander or libel.  Nowhere does it allege a disparagement of Covin or that any factual statement about here was untrue.  The allegation in the original complaint simply cannot be read as stating, either clearly or "in essence," a claim for defamation.  Consequently, the complaint does not contain any allegations of "personal injury" within the meaning of the term as set forth unambiguously in the policy.  Therefore, there exists no genuine issue of material fact as to whether

9      Plaintiff's references to page 7 of Covin's brief filed in the state court have no relevance to the issue of coverage because the brief was not filed until February 17, 2006, almost two years after Penn National denied coverage.  The fact that Covin alleged in 2006 that Lott had slandered her has no bearing on whether the complaint filed in 2004 alleged such conduct.  As the court discussed in its order granting partial summary judgment in favor of Penn National, the amended complaint filed in 2006 did set forth a slander claim which may have been covered by the policy, but Lott failed to give the requisite notice to the insurer of that claim.

coverage was provided under the policy, and the defendant is entitled to summary judgment.

### B.  Exclusions

Penn National further argues that, even if coverage existed in 2004, it had no duty to defend Lott based upon the 2004 complaint because the claims were specifically excluded by the policy language.  The insurer points to the exclusion for injuries "expected or intended" by the insured, and the exclusion for "employment-related" harms.   Because the court finds that the policy did not provide coverage for the allegations of the original Covin complaint, it is not necessary to examine the issue of whether the claims were excluded.  Nevertheless, the court does find that the exclusions provide an alternate basis for granting the motion for summary judgment filed by Penn National.

The exclusions relied upon by the defendant insurer apply only to claims for "bodily injury," and not to "personal injury."  To the extent that the 2004 complaint set forth any claim for "bodily injury" arising from an "occurrence," Penn National argues that it would be excluded because such intentional conduct was necessarily "expected or intended" from the standpoint of the insured. Plaintiff's argument in response is that the conduct must be viewed from the subjective point of view of the insured and that there is an issue of fact as to whether Lott expected or intended to cause "bodily injury" to Covin. Indeed, the language of the contract itself mandates that the expectation of or intention to cause "bodily injury" must be taken "from the standpoint of the insured."  To the extent that plaintiff argues that Lott did not subjectively expect or intend to cause "bodily injury" to Covin, the argument is simply disingenuous.

17

Plaintiff relies on <u>Alabama Farm Bureau Mutual Casualty Insurance Co., Inc., v. Dyer</u>, 454 So. 2d 921 (Ala. 1984), for the proposition that Lott did not "expect or intend" the damage to Covin, but <u>Dyer</u> is plainly distinguishable from the instant case.  In <u>Dyer</u>, after a bench trial on the insurer's declaratory judgment action, the court found that one brother had not "expected or intended" to fatally shoot another brother when he pointed a loaded gun at him.  The trial court took extensive evidence concerning the amicable relationship between the two and shock and dismay of the first brother upon shooting the other.  Based on that evidence, the trial court found as fact that the first brother had not intended or expected to shoot the other and that it was an accident.  By contrast, in this case, whether the conduct of Lott is viewed as an intentional interference with contract or a slander, the actions alleged clearly involved Lott's intention to have Covin removed as the agent on the policies, and the expectation that by doing so, he would deprive her of commissions.  Lott has never asserted that he "accidentally" told the insureds to remove Covin as an agent, and the complaint cannot reasonably be construed as alleging that the conduct was merely negligent.  Lott, the insured, cannot and does not argue that when he told the policyholders to remove Covin as the agent on the policies that he did not expect or intend to cause her the injuries she alleged.  Accordingly, even if the event constituted an "occurrence" for which coverage existed, the exclusion for "expected or intended" acts still would provide a basis for Penn National's denial of coverage in 2004, and the defendant is entitled to summary judgment on the additional ground that Lott subjectively "expected or intended" to cause the "bodily injury" complained of by Covin, thereby excluding coverage for it.

Penn National further asserts that Lott's claims are excluded because they are encompassed within the employer's liability limitation. Because there is at least a question of fact as to whether Covin was an "employee" of Lott's when the conduct at issue took place, the court finds that the defendant is not entitled to summary judgment on the basis of the employment-related exclusion.

<u>CONCLUSION</u>

For all of the reasons set forth above, the motion for summary judgment filed by defendant Penn National is due to be and hereby is GRANTED. Plaintiff's claim for breach of contract arising from a denial of coverage in 2004, the sole claim remaining against this defendant, is due to be DISMISSED WITH PREJUDICE. A separate order will be entered granting the defendant's motion for summary judgment and dismissing the plaintiff's claim with prejudice.

Dated the 26th day of January, 2010.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE